USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/30/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

136 FIELD POINT CIRCLE HOLDING COMPANY, LLC,

Plaintiff,

-against-

ALEXANDER RAZINSKI & TANYA RAZINSKI,

Defendants.

21-CV-11076 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

On February 22, 2026, nearly four years after the operative Answer and Counterclaims were filed, nearly a year after the Court granted summary judgment for Plaintiff, and nearly three months after the Court held an all-day hearing on damages, Defendants Alexander Razinski and Tanya Razinski (the "Razinskis") have moved for leave to amend their Answer and Counterclaims. In response, Plaintiff has moved to have the Razinskis declared "vexatious litigants." For the reasons set forth below, both motions are DENIED.[1]

## BACKGROUND

This action concerns a residential property located at 136 Field Point Circle in Greenwich, Connecticut (the "Property"), which Plaintiff once owned and where the Razinskis once resided. The case is part of a long-running series of disputes between the same parties over the same Property and related agreements. Multiple prior decisions by judges of this Court have thoroughly chronicled the saga. The Court incorporates by reference the recitation of the

[1] The Court is simultaneously issuing its Opinion on damages and directing that final judgment be entered for Plaintiff.

relevant factual background and procedural history provided in its summary judgment decision dated March 4, 2025. *See* Dkt. No. 115 ("SJ Opinion").

In brief, Plaintiff filed this action on December 27, 2021, bringing a claim against the Razinskis and Invar (a corporation wholly owned by the Razinskis and their daughter) for breach of contract in connection with a set of legal arrangements governing the occupancy, financing, and sale of the Property. *See* Dkt. No. 1. Plaintiff and the Razinskis entered into a written agreement whereby the Razinskis would lease the Property and retain an option to purchase it outright. SJ Opinion at 3–4. If the option expired before being exercised, Plaintiff had the right to sell the Property, and the Razinskis would be obligated to cover any deficit between the cash proceeds of the sale (the "Sale Proceeds") and a contractually defined "Required Return Price." *Id.* at 5. In the SJ Opinion, the Court granted summary judgment for Plaintiff on the issue of liability, holding, *inter alia*, that Plaintiff was entitled to a deficit payment and that the Razinskis breached the Master Agreement by failing to make that payment. *Id.* at 23–24. The SJ Opinion did not address the precise amount of the deficit between the Sale Proceeds and the Required Return Price—*i.e.*, the damages for Plaintiff's contract claim—except to the extent required to determine that a deficit existed. *See id.* at 12. The SJ Opinion also noted that, although the Razinskis' Answer contained a section headed "Counterclaims," that portion of the Answer did not identify any legal claims, either explicitly or discernible by the Court, and instead merely recited various facts that the Razinskis asserted were relevant to this lawsuit. *Id.* at 8 n.6.

Following briefing on damages, during which the Razinskis repeated many of the factual allegations contained in their Answer, Dkt. Nos. 136–47, 149–54, the Court held an evidentiary hearing on damages, limited to the question of whether Plaintiff deliberately sold the Property below its market value and failed to mitigate its damages in some amount, Dkt. Nos. 156, 173.

As noted above at footnote one, the Court is simultaneously issuing its Opinion on damages based on the record, including the evidence adduced at the December 3, 2025 Hearing (the "Hearing"). Before that Opinion could be issued, however, Defendants moved for leave to amend their Answer and Counterclaims. Dkt. No. 178. Plaintiff has opposed the motion and cross-moved to have Defendants declared "vexatious litigant[s]." Dkt. No. 179. Both motions are now fully briefed and before the Court for decision. For the reasons set forth below, both motions are DENIED.

## DISCUSSION

Although the totality of the litigation between the parties is sprawling, this particular case is a straightforward contract dispute. It has been pending for years and, when Defendants' motion was filed, had been through motion practice, discovery, briefing on summary judgment, a decision on summary judgment as to liability, briefing on damages, and an all-day evidentiary hearing on damages. As the Court was preparing its decision on damages and a final judgment in favor of Plaintiff, Defendants filed their motion for leave to amend. Because Defendants have offered no valid explanation for their delay and because Plaintiff has clearly demonstrated prejudice, at long last this litigation must come to an end.

## I. APPLICABLE LAW ON A MOTION FOR LEAVE TO AMEND

Rule 15 of the Federal Rules of Civil Procedure requires that, after an initial period not applicable here, a pleading may be amended "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Rule 15(a) also provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant

or deny leave to amend under Rule 15(a)(2) is within the trial court's discretion. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330 (1971).[2]

A court may deny leave to amend for "good reason," which normally involves an analysis of the familiar four factors articulated in *Foman v. Davis*, 371 U.S. 178, 182 (1962): undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman*, 371 U.S. at 182). The "non-movant bears the burden of showing prejudice, bad faith[,] and futility of the amendment." *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 567 F. Supp. 3d 429, 438 (S.D.N.Y. 2021).

Rule 16(b) of the Federal Rules of Civil Procedure provides that scheduling orders "must limit the time to . . . amend the pleadings." Fed. R. Civ. P. 16(b)(3)(A). Once it is entered, a scheduling order may be modified only for "good cause." Fed. R. Civ. P. 16(b)(4). "Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (citing Fed. R. Civ. P. 15(a), 16(b)). The "good cause" inquiry turns on the diligence of the party seeking to modify the scheduling order. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[A] finding of 'good cause' depends on the diligence of the moving party.").

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

## II. THE RAZINSKIS HAVE NOT SHOWN GOOD CAUSE NOR THAT JUSTICE REQUIRES GRANTING LEAVE TO AMEND

The original scheduling order in this case was entered on October 6, 2022. Dkt. No. 39. It provided a deadline for amendment of the pleadings of November 14, 2022. *Id.* The only argument related to "good cause" for extending this deadline by over three years that the Razinskis have made is this Court's SJ Opinion, which they claim apprised them for the first time that they had not actually stated any ascertainable counterclaims. Even though *pro se* litigants are to be afforded special solicitude, they are not excused from the basic requirements of litigation, such as Rule 8's requirement that a pleading consist of a "short and plain statement of the *claim* showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added); *see Ramsay-Nobles v. Keyser*, No. 16-CV-05778 (CM), 2018 WL 6985228, at *6 (S.D.N.Y. Dec. 18, 2018) (applying Rule 8's "short and plain" standard to counterclaims).

Moreover, even if the issuance of the Court's SJ Opinion could have potentially amounted to "good cause," the Razinskis have offered no explanation that could conceivably extend that good cause for nearly a year after the SJ Opinion was issued in March 2025. The Razinskis made no effort to apprise Plaintiff or the Court of their desire to amend their Counterclaims after the SJ Opinion was issued. Although they repeated many of the factual allegations of their original Answer in the briefing on damages, nowhere in those filings did they apprise Plaintiff or the Court that they believed those factual allegations could form the basis of properly pled counterclaims. After the Court issued an Order scheduling an evidentiary hearing on damages and clarifying the open issue that would be the subject of the Hearing, again the Razinskis did not apprise Plaintiff or the Court that they believed their additional factual allegations could support amended counterclaims even if they were not relevant to contractual damages. Then the Court held the Hearing on December 3, 2025, at which witnesses were called

to testify live, and the Court gave the Razinskis every opportunity and ample additional time to present evidence that was even arguably relevant to the damages question for which the Hearing was scheduled. Again, the Razinskis did nothing to apprise Plaintiff or the Court of their belief that additional facts the Court deemed not relevant to the contractual damages question could be relevant to amended Counterclaims. Instead, nearly three months later, the Razinskis filed the present motion. Although the Razinskis' brief suggests that new information derived from the damages Hearing prompted their incredibly untimely motion, they do not point to anything adduced during the Hearing to substantiate that claim. In short, it is impossible for the Court to find "good cause" to amend the scheduling order under Rule 16.

For all of the same reasons, it is clear that the motion should be denied for "undue delay" under the *Foman* factors. Even if the Court overlooked the two-plus years between the scheduling order and the SJ Opinion and only counted the time that had passed since the SJ Opinion, the delay in seeking to amend has clearly been "undue" and is, frankly, entirely unexplained other than by vague references to the Razinskis' *pro se* status. This is insufficient to support a request to essentially start this case over so that ancillary claims largely related to a case being litigated in New York state court can be pursued here. *See Carroll v. Trump*, 590 F. Supp. 3d 575, 586 (S.D.N.Y. 2022) ("[M]ere delay, in the absence of bad faith, dilatory motive or undue prejudice ordinarily will not foreclose leave to amend. But when there has been a delay and the nonmoving party has made a showing of bad faith or undue prejudice, the burden is on the party who wishes to amend to provide a satisfactory explanation for the delay. The longer the period of unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.").

In addition, Plaintiff has clearly met its burden to show that granting the request to amend would subject it to undue prejudice. Prejudice to the non-moving party resulting from a proposed amendment is perhaps the "most important" reason to deny leave to amend. *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). This case, after over four years of litigation, is **over**, awaiting only the final damages number and judgment entered in that amount for Plaintiff (again, in an Opinion issued simultaneously with this one). The proposed counterclaims are essentially an entirely new case, purporting to raise issues about ancillary torts and whether Plaintiff's conduct in a related state court proceeding was improper. While Defendants claim that no new discovery would be required, it is impossible to see how that could be true, just considering the elements of the proposed new claims and comparing them to the contract claims that comprise this lawsuit. Moreover, if the Court allowed Defendants' new claims to go forward, Plaintiff would be entitled to take discovery to defend itself against these new claims and would certainly not be required to waive discovery in order to avoid a finding of undue prejudice.

The factor of bad faith is a closer call. The Court's own observations of the Razinskis at the Hearing suggest decent people who are very emotionally and personally wrapped up in this long-running dispute about the Property they considered their home. There is scant guidance in the Second Circuit regarding what may constitute bad faith for purposes of denying leave to amend, other than that delay alone is not sufficient, and there must be some evidence of dilatory tactics or some other motive to gain an unwarranted tactical or strategic advantage. *See, e.g.*, *Dass v. City Univ. of N.Y.*, No. 18-CV-11325 (VSB), 2024 WL 4986914 at * 5 (S.D.N.Y. Dec. 5, 2024). Although it seems clear that the Razinskis are motivated to keep this case going, just when the Court is on the cusp of entering final judgment against them, the Court is hard-pressed

to find bad faith beyond the extreme delay and eleventh-hour filing. In any event, bad faith is unnecessary where, as here, the evidence of undue delay and undue prejudice is overwhelming and counsels strongly against granting leave.[3]

## III. THE COURT WILL NOT DEEM THE RAZINSKIS VEXATIOUS LITIGANTS

Finally, Plaintiff has cross-moved for an order deeming the Razinskis "vexatious litigant[s]," a status that would require court approval before they could file any motions, seek court relief, or file new cases in this District. *See* Dkt. No. 179-2 at 8–10. The Court will decline to do so at this time. Filing bars are generally governed by the factors set forth in *Safir v. United States Lines, Inc.*, 792 F.2d 19 (2d Cir. 1986). Although such a finding is in the Court's discretion, the following factors are relevant:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing[,] or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Id.* at 24.

Here, the Razinskis have at times struggled to meet deadlines and follow the Court's instructions and have frequently sought to introduce irrelevant issues and seek legal process to pursue those issues. However, in the Court's observations, those efforts have largely been driven by their *pro se* status and not bad faith efforts to harass or deliberately cause difficulties unrelated to matters they genuinely, if mistakenly, believe to be meritorious. Moreover, some of

---

[3] Similarly, the Court need not reach the fourth factor, futility, because, although the claims do not appear meritorious, leave to bring even potentially meritorious claims can be denied where analysis of the other factors overwhelmingly weigh against granting leave.

those actions, as in this case, have been taken in matters where they are the defendants, not plaintiffs, and the Court is particularly hesitant to impose a filing bar where the conduct that could potentially support it was taken in an effort to defend against claims brought by others. Finally, a filing bar should typically be imposed only where other sanctions have been tried and have failed to address the conduct.

The Court is denying the motion for leave to amend and taking the other necessary steps to bring this matter to a close. Prior sanctions have not been imposed and ignored. Under all the circumstances of this case, a filing bar would not be in the interests of justice or serve the court's "constitutional functions." *Id*. The Razinskis are cautioned, however, that the denial of this motion does not wipe the slate clean, and any future consideration of a filing bar could take into account the entire conduct of this case and the related cases in this District.

**CONCLUSION**

For all of the foregoing reasons, Defendants' motion for leave to amend their Answer and Counterclaims is DENIED. Plaintiff's motion to have the Razinskis declared "vexatious litigants" and a filing bar imposed is also DENIED.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 175 and 179.

Dated: September 30, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge